**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NYESHA LASHAE SIMMONS,<br><br>Plaintiff,<br><br>v.<br><br>SUPERINTENDENT WILLIAM FRANTZ, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 3:26-cv-02867<br><br>(SAPORITO, J.) |

# MEMORANDUM

Nyesha Lashae Simmons, a prisoner at SCI-Muncy proceeding *pro se*, has filed an amended complaint against eight defendants affiliated with the prison. (Doc. 10). For the following reasons, Simmons will be permitted to proceed on Eighth Amendment claims and state law claims of intentional infliction of emotional distress against officers Michaelwitz, Engel, Goodson, and McMillan, and Eighth Amendment claims against nurses Swinehart and Mallory. All other claims will be dismissed.

## I. BACKGROUND

Upon screening of Simmons's initial complaint, we found that she had not provided sufficient detail to sustain most of her claims, and she

elected to file an amended complaint. *See* (Docs. 1, 8, 9).

In brief, the amended complaint (Doc. 10) alleges as follows: On October 6, 2024, Simmons filed a Prison Rape Elimination Act ("PREA") complaint against inmate Crystal Belle, "verbally and via written statement" to Lt. K. Engel. Simmons does not describe the substance of the complaint, but she requested to be placed on a different floor or housing unit from Belle. This complaint was allegedly "ignored with zero change nor separation made." On November 28 and 29, two "fights . . . occurred" between Simmons and Belle. After these fights, Simmons was moved to a Restricted Housing Unit for an unspecified period, then to a Psychiatric Observation Cell ("POC") "for depression and claustrophobia." She claims to have been "isolated from phone contact + social contact with peers" until April 2025.

Simmons alleges that in January 2025, during a three-week period while she was in the POC, four officers (Michaelwitz, K. Engel, M. Goodson, and T. McMillan) "rape[d her] by anal penetration." At an unspecified time, Simmons reported the rapes to nurses Kiera Swinehart and Grace Heckman and asked "for STD testing or a rape kit." Simmons was allegedly told by another staff member, Samantha Mallory, that "the

time ha[d] lapsed" and "a sw[a]b is no longer a procedure for STD testing." Instead, Simmons received "blood work." Months later[1], Simmons "formally reported the rapes" via a written PREA complaint.

In January and March 2025, Simmons suffered two medical incidents that she describes as miscarriages. We interpret her to allege that these incidents resulted from being raped in January 2025.[2] During the first incident, in January 2025, "there was blood throughout the entire cell" and "the fetus fell in the toilet." Simmons does not describe what medical care she requested or received. During the March 2025 incident, Simmons had "similar symptoms" to the first miscarriage, but "no fetus passed through." Simmons told Swinehart and Mallory about her symptoms from the March 2025 incident, but the nurses allegedly denied her medical treatment and "expressed that I have to simply 'let the miscarriage pass on its own.'"

---

[1] Simmons does not say when she filed this written report, but she allegedly did so "[w]hile in general population," and the complaint indicates that she was not released to the general population until at least April 2025.

[2] *See* (Doc. 10, ¶ 32) ("The fact that I experienced two miscarriages [within] a two month duration . . . signifies that [officers] . . . sexually assault[ed] me . . . unprotected.").

Simmons names eight defendants: Michaelwitz, Engel, Goodson, McMillan, Swinehart, Heckman, Mallory, and prison superintendent William Frantz. She asserts claims of "breach of duty to protect," "failure to administer adequate legal remedy," and "retaliatory treatment," and requests monetary relief and a transfer to another prison.

## II. Legal Standards

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as

that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

Simmons is pursuing constitutional claims that would fall under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and

> acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III. DISCUSSION

We interpret Simmons to re-assert the claims that we have already recognized as viable: namely, the Eighth Amendment claims and state law claims of intentional infliction of emotional distress ("IIED") against officers Michaelwitz, Engel, Goodson, and McMillan, based on the allegations that they raped her.[3] Simmons's remaining claims are discussed below.

### A. Failure to Protect

If an inmate plausibly pleads that she was incarcerated "under conditions posing a substantial risk of serious harm," and a prison official "knows of and disregards an excessive risk to inmate health or safety,"

---

[3] Although Simmons labels these incidents as a "breach of duty to protect," we construe her to assert Eighth Amendment and IIED claims against these four officers based on their own participation in the alleged assaults. *See* (Doc. 10, ¶¶ 31-33) ("[T]he lieutenants and correction officer sexually assaulted [Simmons] . . . and the intentional infliction of emotional distress were all violations [sic]."); *Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018); *Doe v. Moravian Coll.*, No. 5:20-CV-00377-JMG, 2020 WL 6485099, at *4 n.7 (E.D. Pa. Nov. 4, 2020) (allegations of sexual assault supported an IIED claim).

the complaint may support an Eighth Amendment failure-to-protect claim. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citation omitted). However, Simmons has not pleaded any viable failure-to-protect claims in this complaint.

As with her original complaint, Simmons cannot sustain a claim against Superintendent Frantz because she has not plausibly alleged his personal involvement in these events. At most, she alleges that Frantz "made 'rounds'/appearances in the MHU once a week"; however, she does not allege that she interacted with Frantz or that Frantz witnessed any of the alleged violations or denial of medical care. *See Rode*, 845 F.2d at 1207 (personal involvement in a constitutional violation requires "participation or actual knowledge and acquiescence"). The fact that she may have named Frantz in a later-filed grievance is also insufficient. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

Nor does Simmons state a viable claim against Engel based on his alleged failure to protect Simmons from inmate Belle. Simmons alleges that she complained about Belle to Engel on October 7, and that she was ultimately injured in fights with Belle on November 28 and 29. She appears to assume that her demand to be separated from Belle

immediately created a constitutional obligation for Engel to separate her, but that is not the case. To sustain a failure-to-protect claim, a defendant must be aware of specific facts that demonstrate a substantial risk of serious harm. *See*, *e.g.*, *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014) (plaintiff's general statements to an officer "that he was not 'getting along' and did not 'feel comfortable' with his cellmate" were insufficient). Therefore, Simmons's demand to be separated is insufficient; she does not describe the substance of her PREA complaint against Belle or explain what facts in that complaint would demonstrate Engel's knowledge of an ongoing, substantial risk.[4]

Simmons vaguely alleges that defendant Heckman "continued to allow" her to be raped by officers, and that "anyone could have intervened" during their "'rounds'/shifts and appearances." (Doc. 10, ¶¶ 19-20). However, Simmons does not allege that any defendant witnessed these incidents or knew they were happening at the time; although she allegedly reported the incidents to two nurses, she does not allege that she reported them promptly at a time when the nurses could have

[4] For the same reasons, Simmons's vague allegations that she told others she "feared for [her] safety and physical health" would be insufficient. *See* (Doc. 10, ¶ 19).

intervened. In the absence of these facts, conclusory allegations that defendants "allowed" these events to happen, or "could have intervened," do not sustain a constitutional claim. *See Bistrian v. Levi*, 696 F.3d 352, 371-72 (3d Cir. 2012) (plaintiff must plead facts showing "a realistic and reasonable opportunity to intervene").

**B. Medical Care**

Next, Simmons asserts claims of "failure to administer adequate medical remedy" against the three nurses, which we construe as Eighth Amendment claims.[5] To proceed on this type of claim, Simmons must allege facts showing (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) that the deliberate indifference caused harm to the plaintiff. *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). Deliberate indifference "requires more than just making the wrong judgment call or failing to prevent harm. And in the specific context of prison medical care, it is not enough that a prisoner or another doctor would prefer a different approach than the one corrections officials took." *DiFraia v. Ransom*, 171 F.4th 622, 629 (3d Cir. 2026).

[5] *See* (Doc. 10, ¶ 34) (claiming that the nurses "exercised deliberate indifference" in providing "no adequate medical remedy").

While we do not diminish the seriousness of Simmons's allegations that she was raped by prison officers, she has not stated a plausible Eighth Amendment claim regarding her medical care for these incidents. Simmons's complaint that she was tested for STDs via blood testing, instead of a swab, is insufficient; she did not have a constitutional right to dictate the method of testing, nor has she alleged that she contracted an STD or was otherwise harmed by the method of testing. Simmons does not say when she verbally reported the alleged rapes to the nurses; therefore, their conclusion that the "time had lapsed" for a rape kit does not itself suggest deliberate indifference. These medical judgments, even if they were erroneous, do not suggest Eighth Amendment violations.

However, Simmons has stated plausible claims against Swinehart and Mallory based on their alleged refusal to provide medical care to Simmons in March 2025. In so finding, we need not assume that Simmons's March 2025 medical issues were in fact caused by a miscarriage or that they were related to the alleged incidents in January 2025. At this stage, it is sufficient that Simmons allegedly suffered a medical problem that caused significant bleeding and that the nurses allegedly refused her medical care and told her to let it "pass on its own."

*See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (intentional refusal to provide medical care for a serious medical need may constitute deliberate indifference).

**C. Retaliation**

Finally, Simmons claims that various defendants' actions were motivated by retaliation for filing a grievance and a PREA complaint. To state a prima facie case of First Amendment retaliation, a plaintiff must show that (1) she was engaged in constitutionally protected conduct, (2) she suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising her First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citations and quotations omitted). Typically, the plaintiff must show "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016).

We interpret Simmons to allege that various defendants' actions

reflected retaliation for her filing (1) a July 2024 grievance about the DOC's refusal to recommend her for parole (Doc. 10, ¶ 36; *see* Doc. 1-1 at 13); (2) her October 2024 PREA complaint against Belle; and (3) a November 2024 petition for writ of *habeas corpus* in this court relating to the denial of parole. She claims that retaliation is demonstrated by "a pattern of events" that includes the "uninvestigated" complaint against Belle, the "extreme and excessive confinement" after her fights with Belle, and the alleged rapes by prison officers. *See* (Doc. 10, ¶¶ 37-39).

Simmons has not plausibly pled a retaliatory motive for these events. Her allegation that the Belle complaint was "uninvestigated and ignored," even if true, does not itself suggest that the failure to respond was motivated by retaliation. *See*, *e.g.*, *Gilmore v. Lamas*, No. 19-CV-5571, 2020 WL 703655, at *5 (E.D. Pa. Feb. 11, 2020). Simmons's own allegations indicate that her "extreme and excessive" confinement was imposed because of the fights, not her PREA complaint; moreover, there is no indication that any of these defendants was involved in determining the conditions of her confinement.

Ultimately, Simmons does not allege facts showing that any other defendant was even aware of her parole disputes or PREA complaint, nor

does she offer any plausible explanation why these unrelated complaints would motivate prison officers to abuse her.[6] *See*, *e.g.*, *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 6541008, at *17 (M.D. Pa. Nov. 21, 2012) (plaintiff's "subjective sensitivity" to retaliation based on "events . . . separated in time from one another by months [that] entail disparate acts by different actors" did not support a plausible claim). Therefore, her retaliation claims will be dismissed.

## IV. Conclusion

For the foregoing reasons, Simmons will be permitted to proceed on (1) Eighth Amendment claims against officers Michaelwitz, Engel, Goodson, and McMillan; (2) and state law claims of intentional infliction of emotional distress against Michaelwitz, Engel, Goodson, and McMillan; and (3) Eighth Amendment claims against Swinehart and Mallory. All other claims will be dismissed. An appropriate order follows.

Dated: November 23, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge

---

[6] Simmons vaguely alleges that defendant Goodson is a "blood relative" of Belle (Doc. 10, ¶ 21); if this was intended to support a theory of retaliation, it is insufficient for the reasons described above. Presumably, Simmons seeks to imply that Goodson had some animus against Simmons based on her disputes with Belle, but that would not show he was retaliating against Simmons for protected activity.